DIESEL TRUCK DRIVERS TRAINING SCHOOL, INC., Appellant,

v.

Lawrence ERICKSON, Respondent.

No. 46581.

Supreme Court of Minnesota.

July 29, 1977.

---

Patrick F. Sullivan and Edward A. Towey, St. Paul, for appellant.

Dennis W. Strid and Merlin W. Dahl, Minneapolis, for respondent.

Heard before PETERSON, MacLAUGHLIN and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This appeal comes from a judgment of the district court in a franchise termination case. The action was brought by the Diesel Truck Drivers Training School (school), a Wisconsin corporation, to recover sums allegedly owed to it by Lawrence Erickson, its Minnesota franchisee. Erickson answered and counterclaimed for breach of contract. The jury trial was held in Hennepin County District Court. The jury returned a special verdict, and an order for judgment was entered in favor of Erickson. Following a denial of its alternative motion for judgment notwithstanding the verdict or a new trial, the school brought this appeal.

On January 9, 1970, Erickson and the school entered into a franchise contract. An addendum to this contract was executed by the parties on May 2, 1973. Erickson opened the Minnesota office on February 15, 1970, and operated it continuously until it was physically closed by the school on February 27, 1974; Erickson's franchise was also terminated in writing by the school on that date. The school then brought suit against Erickson to recover a $15,000 franchise fee and "charge backs" of $18,343.10 it alleged were owed to it by Erickson. Erickson denied liability for either the franchise fee or the "charge backs," and counterclaimed for "accruals" allegedly due him from the school in the amount of $30,000, plus $300,000 for lost profits and $500,000 in punitive damages. The jury verdict resulted in judgment for Erickson in the amount of $80,338.50.

The school is a Wisconsin corporation specializing in the training of drivers for large tractor-trailer diesel trucks. It draws students from throughout the Midwest by means of franchised recruiting and advertising offices in the various states where it is licensed. Erickson is a former real estate salesman who was engaged by the school to operate a Minnesota franchise office, the purpose being to recruit students and send them to the Madison, Wisconsin, training facility. The arrangement between the two parties was embodied in the written franchise contract referred to above. This contract had 26 paragraphs in all, but only five are relevant to the present controversy:

clauses 2, 6, 14, 21, and 25.[1] The school claims that it is entitled to receive a $15,000 franchise fee as specified in clauses 2 and 25; and that it is entitled to "charge backs," due to student cancellations following Erickson's termination, under clauses 6 and 21. The school also contends that it was justified in terminating Erickson's franchise based upon clause 14, alleging that Erickson had not supplied the required 15 enrollments per month. Erickson does not on appeal seriously dispute his liability for "charge backs" under clauses 6 and 21, but does argue that the jury was justified in finding in his favor as to the termination under clause 14, and in finding general damages due to the breach of contract by the school.

The jury's answers to the eight special interrogatories were as follows: (1) Erickson did not owe the school the $15,000 franchise fee; (2) Erickson owed the school $18,-343.10 in charge backs; (3) Erickson should recover $60,000 in damages for breach of contract by the school; and (4) the school owed Erickson $38,681.60 in accrued commissions. The net result was a verdict in Erickson's favor for $80,338.50.

We are confronted with the following legal issues:

(1) Did the district court err in submitting the contract to the jury without construing it as a matter of law?

(2) Did the district court commit prejudical error in failing to give a jury instruction requested by the school?

(3) Did the district court err in refusing to grant a judgment notwithstanding the verdict or a new trial on the grounds of an improper jury verdict?

1. These clauses read as follows:

"2. Erickson is desirous of entering into this agreement with the School and agrees to pay a franchise fee for the exclusive right to solicit students for the School in the State of Minnesota in the amount of Fifteen Thousand Dollars ($15,000.00) payable in the following manner:

a. Upon execution of this agreement, Erickson agrees to make monthly installment payments in the amount of all amounts in excess of One Thousand Dollars ($1,000.00) that Erickson receives as commissions by enrolling students for the Diesel School, said One Thousand Dollars ($1,000.00) being the amount of net profit Erickson earns in any single month and said One Thousand Dollars ($1,000.00) to be the net taxable income on an individual monthly basis; and, any expenses incurred during any individual month are not to be carried over or carried back and are only applicable for the month expenses are incurred."

"6. Erickson agrees that commissions will be paid only if an enrolled student makes payments on his contract, and that no commission will be paid if the student cancels his contract by written notice to the School or the Educational Credit Bureau; or the Educational Credit Bureau returns the contract as an uncollectible contract."

"14. It is further agreed by Erickson that he will produce, after a grace period of one hundred eighty (180) days, a minimum of fifteen (15) enrollments per month, and said minimum must be maintained or the School, at its discretion, can declare this agreement null and void."

"21. It is further agreed that Erickson's commissions on accruals are automatically terminated when he is no longer soliciting students for the School or when he or the School terminate this agreement because Erickson is not meeting his monthly enrollment quota. And, further, Erickson is to 'receive no accruals on enrollments when the enrollee does not pay his tuition balance voluntarily and the student's contract must be placed in collection at an attorney's office and/or the Educational Credit Bureau returns the contract to the School as uncollectible.'

"25. It is further agreed by and between the parties hereto that the $15,000.00 heretofore mentioned will not have to be paid by Erickson in the following event:

a. The School accepts the fact that a certain number of enrollments procured by Erickson and/or his agents will cancel, or attempt to, their contract with the School, and if said cancellations on Erickson's enrollments are less than twenty-five (25) percent of his total enrollments then said $15,000.00 will not have to be paid.

(1) A cancellation is defined as a student who is enrolled by virtue of having signed a contract with the School agreeing to take the training and paying for the tuition, and said student does not pay his tuition pursuant to the terms of the contract and/or notifies the School in writing and/or the Educational Credit Bureau that he does not intend to take his training and desires to cancel his contract; or the Educational Credit Bureau returns the contract to the School as uncollectible in their opinion and said contract is returned to the School by the Educational Credit Bureau."

1. The school first argues that the terms of its contract with Erickson were clear, that the evidence regarding the failure of Erickson to live up to those terms was conclusive, and that hence it was entitled to a directed verdict or judgment notwithstanding the verdict.

First, the terms of the contract lack clarity. As pointed out by respondent, clause 14 is ambiguous on its face in requiring Erickson to produce a "minimum of fifteen (15) enrollments per month." This could be interpreted as a minimum for each and every month, a yearly average, an average to date, and so on. The school's statement that this clearly means "the School can terminate the agreement if Erickson did not meet a quota of fifteen students per month" is of little interpretive assistance.

■ Clause 25 is similarly vague. It states that if the cancellations are "less than twenty-five (25) percent of his [Erickson's] total enrollments then said $15,000.00 will not have to be paid." Again, does this refer to enrollments to date, per year, per month? The calculation of the school refers to cancellations as of the time of trial, but Erickson correctly points out that the calculation must refer to the date of termination, not the time of trial. This calculation, as computed by Erickson's counsel, would result in a figure of 23.4 percent, as opposed to the school's claim of 37 percent. In any event, the matter was not so clear that a directed verdict was mandatory.

Similarly, the extrinsic evidence regarding these terms, their original meaning and possible subsequent modification was disputed, and formed the basis for much of the controversy at trial. It was accordingly not improper for the trial judge to permit the jury to find whether, as a matter of fact, the school had breached the franchise agreement. The jury's findings that the school improperly terminated the contract but that Erickson nevertheless did owe the school "charge backs" by reason of cancellations are adequately supported by competent evidence at the trial.

2. At the end of the judge's instructions to the jury, the school requested an instruction that "if you find Lawrence Erickson breached the agreement, then he's not entitled to damages." The trial court denied the request.

■ The trial court was entirely justified in refusing this request. At the completion of the testimony, the trial judge made a request of the parties for suggested jury instructions. As stated by Erickson: "For whatever reason neither counsel favored the Court with written instructions." The trial judge noted in his memorandum that "throughout this trial, [the court] had requested counsel in chambers for assistance in drawing up the questions and had furnished counsel proposed questions, in writing, prior to the final argument." For the school's counsel to make an oral request for an instruction at this point was unfair both to opposing counsel and to the court.

In any event, the requested instruction itself was inappropriate. First, it presumed that the special interrogatories included a question concerning *Erickson's* breach of contract. The only interrogatory specifically alluding to breach of contract was No. 5, which referred to a possible breach *by the school*. The first four interrogatories concerned Erickson's possible liabilities to the school for the franchise fee and charge backs, but did not refer to any breach of contract by Erickson. Nor does the evidence show any "breach" by Erickson. At best, from the school's point of view, it had gained the right to terminate under clause 14 if Erickson had not made the required quota, but otherwise the evidence shows that Erickson operated the franchise in good faith until the moment of termination by the school. Finally, the complaint itself states no claim based on breach of contract, but only alleges that Erickson owed the school the franchise fee and charge backs. The requested instruction was therefore properly denied by the district court.

3. The monetary aspect of the jury's decision is contained in the answers to interrogatories 2, 4, 6, and 8. First, it found that Erickson did not owe the $15,000 franchise fee. Second, it found that Erickson

owed the school a total of $18,343.10 for "charge backs" due to cancellations. Third, it awarded Erickson $60,000 as damages for breach of contract by the school. Fourth, it determined that the school owed Erickson $38,681.60 in accrued commissions.

It is this last figure which causes difficulty. Erickson's original counterclaim for accrued commissions was $30,000. This claim was later reduced at trial, through Erickson's own testimony, to $20,338.50. The problem is that, to the penny, this sum added to the $18,343.10 the jury found Erickson owed the school comes to $38,681.60, or the amount the jury found the school owed Erickson for accrued commissions. Clearly the jury was confused in making this award, since it gave back to Erickson the same amount it had found Erickson owed to the school.

The trial judge was unwilling to admit this obvious error in the jury's computations:

"In respect to the plaintiff's complaint of how the jury calculated the amount of $38,681.60 awarded to the defendant, the Court cannot make any inquiry as to how the jury arrived at this figure. No doubt, the matter of making the computation was very complicated   *   *   *."

There is little complication in noting that $20,338.50 plus $18,343.10 equals $38,681.60. It is fairly clear what result the jury intended: Erickson did not owe the franchise fee, but he did owe the "charge backs," while the school owed Erickson the "accruals" and general damages for breach of contract. Aside from the contract damages ($60,000), this would result in a net verdict in Erickson's favor of $20,338.50 minus $18,343.10 equals $1,995.40.

It was the duty of the trial judge to recognize and correct this error by revising the amount awarded to Erickson in conformity with the undisputed evidence. As it stands, Erickson received not only the "accruals" he claimed, but also the amount he was found by the jury to owe to the school. The judgment of the district court in favor of Erickson is therefore reduced by $18,343.10, for a net judgment of $61,995.40.

Affirmed in part, modified in part, and remanded for judgment to be entered in accordance with this opinion.